CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 1 1 2014

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| BIOVERIS CORPORATION, | ) | |
| | ) | Civil Action No. 3:13CV00022 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | By: Hon. Glen E. Conrad |
| SAMUEL J. WOHLSTADTER, | ) | Chief United States District Judge |
| | ) | |
| Defendant. | ) | |

In this diversity action, BioVeris Corporation asserts that Samuel J. Wohlstadter breached the terms of a guaranty agreement by failing to pay certain financial obligations owed to BioVeris Corporation by a third party. The case is presently before the court on the plaintiff's motion for summary judgment. For the reasons that follow, the motion will be granted.

## Background

The plaintiff, BioVeris Corporation ("BioVeris"), is a biotechnology company incorporated in Delaware with its principal place of business in Indiana. Mr. Wohlstadter, a Virginia citizen, is the president and chief executive officer of Wellstat Vaccines, LLC (f/k/a 32 Mott Street Acquisition I, LLC) ("Vaccine Newco" or "Vaccines"), a biotechnology company focused on the manufacture, sale, and distribution of vaccines. The facts of this case are undisputed.

In June 2007, Roche Holding Ltd. acquired BioVeris. Compl. ¶ 8; Answer ¶ 8. As part of that transaction, BioVeris entered into an asset transfer agreement with Vaccines. Compl. ¶¶ 8–9; Answer ¶ 9. Under the terms of the Vaccines Asset Transfer Agreement ("VATA"), BioVeris provided assets related to the research, development, manufacture, production, testing, sale, distribution, and use of vaccines in exchange for a series of payments from Vaccines. VATA 1,

Docket No. 14-4. Specifically, Section 2.5 of the transfer agreement required Vaccines to make the following payments to BioVeris: $1,000,000 at closing; $50,000 on each of the first, second, and third anniversaries of the closing date; and $2,709,000 on the third anniversary of the closing date. See id. at 10. The closing date for the agreement was June 26, 2007. Lannert Decl. ¶ 7, Docket No. 14-2. Mr. Wohlstadter signed the asset transfer agreement in his capacity as chief executive officer of Vaccines. VATA 29, Docket No. 14-4. The agreement is dated April 4, 2007. Compl. ¶ 9; Answer ¶ 9.

Also on April 4, 2007, BioVeris entered into an agreement with Mr. Wohlstadter, in which the defendant personally, "absolutely, unconditionally[,] and irrevocably guarantee[d] all obligations of . . . Vaccine Newco to make post-closing payments to [BioVeris] pursuant to Section 2.5 of the Vaccines Asset Transfer Agreement." Guaranty Agreement, Docket No. 1-1. The guaranty agreement provided that "[t]he obligations of the undersigned under or in respect of this guarantee are independent of the guaranteed obligations," and that "a separate action or actions may be brought and prosecuted against the undersigned to enforce this guarantee, irrespective of whether any action is brought against Vaccine Newco . . . or whether Vaccine Newco . . . is joined in any such action." Id. The guaranty agreement was "expressly conditioned upon the closing of the Vaccines Asset Transfer Agreement" and would "terminate automatically and be of no further force and effect upon the termination of the Vaccines Asset Transfer Agreement." Id.

Vaccines made the required payments upon closing and upon the first and second anniversaries of the closing date, but failed to make the required payments to BioVeris on the third anniversary of the closing date, June 26, 2010. In a separate action brought by BioVeris against Vaccines, the United States District Court for the District of Delaware entered judgment in

BioVeris's favor in the amount of $2,759,000, plus prejudgment and post-judgment interest.[1] Sennett Decl. Ex. B, Docket No 14-16. BioVeris has not received any payment—from either Vaccines or Mr. Wohlstadter—in satisfaction of this judgment. Lannert Decl. ¶¶ 14–15. BioVeris seeks $2,759,000, plus prejudgment interest, post-judgment interest, and the costs of this action.

The case is presently before the court on the plaintiff's motion for summary judgment. Mr. Wohlstadter opposes the motion on the sole basis that the forum-selection clause in Section 10.5 of the underlying Vaccines Asset Transfer Agreement requires the plaintiff to sue in Delaware rather than in this court:

> All actions and proceedings arising out of or relating to this Agreement shall be heard and determined in the Chancery Court of the State of Delaware or any federal court sitting in the State of Delaware, and the parties hereto hereby irrevocably submit to the exclusive jurisdiction of such courts . . . in any such action or proceeding and irrevocably waive the defense of an inconvenient forum to the maintenance of any such action or proceeding. The consents to jurisdiction set forth in this paragraph . . . shall not be deemed to confer rights on any Person other than the parties hereto. The parties hereto agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable Law.

VATA 26, Docket No. 14-4. It is undisputed that the guaranty agreement does not itself contain a forum-selection clause, nor does it expressly refer to the one in the underlying agreement. The court held a hearing on the motion on May 28, 2014. Having been fully briefed, the matter is ripe for review.

## Standard of Review

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether to grant a motion for summary judgment, the court must view

---

[1] The Delaware Court also entered judgment against Wellstat Diagnostics, LLC ("Diagnostics"), another company whose payments Mr. Wohlstadter had guaranteed in the contract at issue. On January 21, 2014, Diagnostics wired payment to BioVeris in satisfaction of the judgment. BioVeris does not seek damages from Mr. Wohlstadter with respect to Diagnostics.

3

the record in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). To withstand a summary judgment motion, the non-movant must produce sufficient evidence from which a reasonable [fact finder] could return a verdict in his favor. Id. at 249–50. "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of [the non-movant's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (quoting Phillips v. CSX Transp., Inc., 190 F.3d 285, 287 (4th Cir. 1999)).

## Discussion

BioVeris moves for summary judgment based on Mr. Wohlstadter's undisputed failure to pay the amount owed to BioVeris by Vaccines as required by the express terms of the guaranty agreement. Mr. Wohlstadter opposes the motion on the sole basis that the forum-selection clause in the underlying Vaccines Asset Transfer Agreement requires the plaintiff to sue in Delaware rather than in this court. The defendant also contests the plaintiff's request for prejudgment interest. The court will address each issue in turn.

I. **Forum-Selection Clause**

The defendant contends that the forum-selection clause in the underlying agreement requires this litigation to proceed, if at all, in Delaware. In the absence of any such clause, it is clear that venue is proper in this court since Mr. Wohlstadter is a resident of Madison County, Virginia, within this district and division. Compl. ¶ 7; Answer ¶ 7; see 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."); Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex., 134 S. Ct. 568, 578 (2013) ("[V]enue is proper so long as the requirements of § 1391(b) are met, irrespective of any forum-selection clause."). However, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." Atl. Marine Constr. Co., 134 S. Ct. at 581. It is undisputed that

4

the guaranty agreement does not itself contain a forum-selection clause, nor does it expressly refer to the one in the underlying Vaccines Asset Transfer Agreement. Rather, Mr. Wohlstadter argues that the guaranty implicitly incorporates the forum-selection clause expressed in Section 10.5 of the underlying agreement.

Several federal courts have considered whether a guaranty agreement should be interpreted to include a forum-selection clause expressed only in the underlying agreement establishing the guaranteed obligation. The factors relied upon by other courts in making that determination inform the court's decision in the instant case.[2] Although no single factor is given controlling weight, courts rely heavily on the language of the agreements. Where the guaranty expressly states that the guarantor's obligations are independent of the obligations described in the underlying agreement, courts have declined to incorporate the forum-selection clause. See, e.g., Pioneer Commercial Funding Corp. v. Norick, 2006 WL 3354141, at *2 (E.D. Pa. Nov. 17, 2006) (declining to incorporate a forum-selection clause expressed in the underlying agreement where the guaranty "expressly states that 'the obligations hereunder are independent of the obligations of [the party to the underlying agreement].'").

Where the guarantor undertakes to perform all obligations contained in the underlying agreement, courts have construed the agreements together and incorporated the forum-selection clause into the guaranty. See Ameritrust Co. Nat'l Ass'n v. Chanslor, 803 F. Supp. 893, 895 (S.D.N.Y. 1992) (guarantor unconditionally guaranteed the "performance and observance of all obligations, representations and warranties" in the underlying agreement); Century 21 Real Estate,

---

[2] A federal court sitting in diversity must apply the forum state's conflict of law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941). Under Virginia law, "[t]he nature, validity and interpretation of contracts are governed by the law of the place where made, unless the contrary appears to be the express intention of the parties." Woodson v. Celina Mut. Ins. Co., 177 S.E.2d 610, 613 (Va. 1970). Here, contract interpretation is at issue—specifically, whether the guaranty agreement incorporates the forum selection clause in Section 10.5 of the underlying Vaccines Asset Transfer Agreement—but neither party was able to advise the court at the hearing on the instant motion where the contract was made. Consequently, the court has surveyed relevant federal cases.

5

LLC v. Gateway Realty, LLC, 2011 WL 1322006, at *5 (guaranty explicitly stated that the guarantors would undertake "all obligations of Franchisee" under the franchise agreement); Hardee's Food Systems, Inc. v. Iqbal, 2005 WL 2333897, at *1 (E.D. Mo. Sept. 22, 2005) (guarantors "agree[d] personally to be bound by each and every provision in" the underlying agreement "without limitation"). Similarly, where the guaranty agreement is a form contract, courts have imported terms from the underlying agreement, but when the guaranty agreement contains negotiated terms, the guaranty is more likely to stand on its own. Compare Ameritrust, 803 F. Supp. at 896 (incorporating forum-selection clause where "the [g]uarantee is a form document" while the underlying agreements "were specifically prepared for the transaction in question."), with Pioneer, 2006 WL 3354141, at *2 (finding the guaranty to be a separate written agreement where the guaranty "contains many negotiated terms").

Courts have also considered the identity of the parties to each agreement. See Ameritrust, 803 F. Supp. at 896 (explaining that "where two or more written instruments between the same parties concerning the same subject matter are contemporaneously executed, they will be read and interpreted together") (emphasis added); see also Pioneer, 2006 WL 3354141, at *2 (declining to incorporate a forum-selection clause expressed only in the underlying agreement where "[the guarantor] is not a party to the [underlying] agreement," but rather "a separate written agreement exists governing the relationship between [the guarantor and guarantee]").

Other considerations include whether the guaranty agreement "refers to the contract whose performance is guaranteed," Ameritrust, 803 F. Supp. at 896, and the proximity with which the guaranty and underlying agreement were signed. See, e.g., Century 21, 2011 WL 1322006, at *5 (construing together agreements executed on the same date); Ameritrust, 803 F. Supp. at 896 (construing together documents that were "executed together"); Pioneer, 2006 WL 3354141, at *2 (declining to construe together documents that were negotiated five months apart).

6

After weighing the relevant factors in context with the facts of the instant case, the court is convinced that the guaranty agreement between BioVeris and Mr. Wohlstadter is susceptible of only one reasonable interpretation, and that summary judgment in the plaintiff's favor is appropriate. See In re Fairfax Medical Center Associates II, 121 F.3d 698, at *4 (4th Cir. Sept. 2, 1997) (unpublished table decision) (explaining that disposition of a matter on summary judgment is inappropriate when a contract is susceptible of two reasonable interpretations). Although the agreements bear the same date and "[r]eference is made" in the guaranty agreement to the Vaccines Asset Transfer Agreement, Guaranty Agreement 1, Docket No. 14-5, the remaining circumstances clearly establish that the guaranty agreement is a related, but independent, stand-alone contract, such that the forum-selection clause in the asset transfer agreement does not extend to the guaranty agreement.

Here, the contract language indicates that the asset transfer agreement and guaranty are separate agreements. The underlying agreement between BioVeris and Vaccines consists of the "Vaccines Asset Transfer Agreement, together with all annexes, exhibits, schedules and other documents attached [there]to." Vaccines Asset Transfer Agreement 1, Docket No. 14-4. The guaranty agreement is neither attached nor otherwise mentioned. As in Pioneer, where the forum-selection clause in the underlying agreement did not extend to the guaranty agreement, the guaranty agreement at issue expressly states that "[t]he obligations of the undersigned under or in respect of this guarantee are independent of the guaranteed obligations." Guaranty Agreement, Docket No. 14-5. Additionally, the guaranty agreement specifically provides that "a separate action or actions may be brought and prosecuted against the undersigned to enforce this guarantee . . . ," Guaranty Agreement, Docket No. 1-1, without limiting where such an action may be brought.

The description of Mr. Wohlstadter's obligations under the guaranty agreement also suggests that the guaranty and asset transfer agreements are separate. Unlike Century 21,

7

Ameritrust, and Hardee's, where each guarantor agreed to be bound by every term of the underlying agreement, Mr. Wohlstadter's obligation is expressly limited to making the post-closing payments owed to BioVeris by Vaccines and Diagnostics under Section 2.5 of their respective asset transfer agreements. Guaranty Agreement 1, Docket 14-5. Unlike the form contract in Ameritrust, the guaranty agreement is specifically tailored to the transaction between BioVeris and Mr. Wohlstadter, and it contains several negotiated terms.

Further, although Mr. Wohlstadter signed the asset transfer agreement in his capacity as chief executive officer of Vaccines, he is not a party to that agreement. Rather, a separate guaranty agreement "govern[s] the relationship" between BioVeris and Mr. Wohlstadter. Pioneer, 2006 WL 3354141, at *2. By its express terms, the forum-selection clause in the Vaccines Asset Transfer Agreement only applies to disputes between BioVeris and Vaccines. VATA 26, Docket No. 14-4 ("The consents to jurisdiction set forth in this paragraph . . . shall not be deemed to confer rights on any Person other than the parties hereto.").

Finally, there is an additional and very persuasive factor in the instant case that is not mentioned in any other case surveyed by the court. The guaranty agreement was drafted and executed with the assistance of sophisticated counsel on both sides—the same counsel who prepared the Vaccines Asset Transfer Agreement. If the parties intended to include a forum-selection clause in the guaranty agreement, counsel clearly knew how to draft language to that effect. For all of these reasons, the court concludes that the guaranty agreement does not import the forum-selection clause from the underlying asset transfer agreement.

Since the forum-selection clause in Section 10.5 of the Vaccines Asset Transfer Agreement does not extend to the guaranty agreement, the defendant's procedural defense must fail. Mr. Wohlstadter has not offered, in writing or at the hearing on the instant motion, any substantive defense to the plaintiff's allegations. There is no genuine dispute as to any material fact, and Mr.

8

Wohlstadter has provided no evidence from which a reasonable fact finder could conclude that he did not breach the terms of the guaranty agreement. Anderson, 477 U.S. at 249–50. Accordingly, the plaintiff's motion for summary judgment must be granted.

## II. Calculation of Interest

Having found in favor of the plaintiff in this matter, it becomes necessary to determine the proper rate of prejudgment interest, if any, to which BioVeris is entitled. "Whether prejudgment interest should be awarded . . . is a matter within the sound discretion of the district court." Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 633 (4th Cir. 1999).

"Virginia law governs the award of prejudgment interest in a diversity case." Signet Bank, 166 F.3d at 633. Under Virginia law, "[i]n any . . . action at law or suit in equity . . . the final order . . . may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence." Va. Code § 8.01-382. "The award of prejudgment interest is to compensate Plaintiff for the loss sustained by not receiving the amount to which he was entitled at the time he was entitled to receive it, and such award is considered necessary to place the [plaintiff] in the position he would have occupied if the party in default had fulfilled his obligated duty." Marks v. Sanzo, 345 S.E.2d 263, 267 (Va. 1986) (quoting Employer-Teamsters Joint Council No. 84, Health & Welfare Fund v. Weatherall Concrete, Inc., 468 F. Supp. 1167, 1171 (S.D.W. Va. 1979)). "If the contract . . . does not fix an interest rate, the court shall apply the judgment rate of six percent to calculate prejudgment interest pursuant to § 8.01-382 . . . ." Va. Code § 6.2-302(B).

Under the facts of this case, an award of prejudgment interest is appropriate. The plaintiff was entitled to receive $2,759,000 from either Vaccines or Mr. Wohlstadter on June 26, 2010. An award of prejudgment interest is necessary to place BioVeris in the position it would have occupied if Mr. Wohlstadter had fulfilled his obligation under the guaranty agreement. See Marks, 345

9

S.E.2d at 267. Because there is no interest rate set forth in the guaranty agreement, the plaintiff will be awarded prejudgment interest at the rate of six percent from June 26, 2010 until the date of entry of final judgment. The plaintiff is also entitled to post-judgment interest at the rate set forth in 28 U.S.C. § 1961.

## **Conclusion**

For the reasons stated, the court will grant the plaintiff's motion and enter judgment in favor of BioVeris Corporation in the amount of $2,759,000, plus prejudgment interest at the rate of six percent and post-judgment interest at the rate set forth in 28 U.S.C. § 1961. The plaintiff's pending motion for leave to appear at trial without local counsel will be dismissed as moot, and the action will be stricken from the active docket of the court.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 11th day of June, 2014.

                                                            Chief United States District Judge